Lina Franco (LF-1102)
Wilhlem Ceron
Lina Franco Law, P.C.
42 Broadway, Suite 12-126
New York, New York 10004
www.LinaFrancoLawPC.com
Tel (800) 933-5620

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
ALEJANDRO RIVERA, CARLOS MONTIEL,
ALFONSO GONZALEZ, RIGOBERTO SALAS, LUIS
RAMIREZ HERRERA, PEDRO GONZALEZ,
CARLOS MUNOZ HERNANDEZ, ANTONIO
VIVAR, OSMAN SAMAYOA, SERGIO JUAREZ,
JESUS ORTIZ, ANDRES FUENTES, JORGE ORTIZ,
NOE ESCAMILLA, HUGO SAPON, JOSE RIVERA,
GUSTAVO JUAREZ, IRAEL JIGUAN, JUAN J.
LOPEZ, JUSTINO CUENCA, AURELIO SALAS,
JORGE ALCARAZ AND DAVID ROJAS, *individually*
*and on behalf of others similarly situated,*

|  |  |
|---|---|
| | **COMPLAINT** |
| | **COLLECTIVE ACTION** |
| | **UNDER 29 U.S.C. § 216(b)** |
| | **JURY TRIAL** |
| | **DEMANDED** |

*Plaintiff,*

-AGAINST-
RELAY DELIVERY, INC., ALEX BLUM AND
MICHAEL CHEVETT, *IN THEIR INDIVIDUALS AND*
*PROFESSIONAL CAPACITY,*

*Defendants.*
------------------------------------------------------------------X

## **NATURE OF THE ACTION**

1.      Plaintiffs Alejandro Rivera, Carlos Montiel, Alfonso Gonzalez, Rigoberto Salas,

Luis R. Herrera, Pedro Gonzalez, Carlos Munoz Hernandez, Antonio Vivar, Osman Samayoa,

Sergio Juarez, Jesus Ortiz, Andres Fuentes, Jorge Ortiz, Noe Escamilla, Hugo Sapon, Jose

Rivera, Gustavo Juarez, Irael Jiguan, Juan J. Lopez, Justino Cuenca, Aurelio Salas, Jorge Alcaraz

and David Rojas, (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. in order to remedy Defendants' wrongful withholding of Plaintiffs' lawfully earned minimum and overtime compensation, and Defendants' misappropriation of tips. Plaintiffs also bring these claims under New York Labor Law ("NYLL"), Article 6, §§ 190 et seq., and Article 19, §§ 650 *et seq*, as well as the supporting New York State Department of Labor Regulations for violations of minimum wages, overtime wages, spread-of-hours pay, misappropriation of tips, and notice and record keeping requirements.

## **SUMMARY**

2.      Plaintiffs were employed by Defendants, Relay Delivery, Inc. ("Relay"), Alex Blum ("Blum"), and Michael Chevett ("Chevett") (collectively "Defendants") as delivery couriers.

3.      Plaintiffs' job duties included picking up goods from restaurants and other establishments that engaged the services of Relay Delivery, Inc. and delivering such goods to specified addresses.

4.      Defendants have repeatedly deprived Plaintiffs of their lawfully earned wages as well as their overtime compensation. For the majority of the relevant time period, Plaintiffs were paid an amount of Six Dollars ($6) per hour irrespective of the number of hours they worked.

5.      On or around March or April 2017, after several pleas from Plaintiffs, Defendants raised Plaintiff's wages per hour from $6 to $7.50 per hour.

6.      Defendants misclassified Plaintiffs as independent contractors and paid them at an hourly rate less than minimum wage and no overtime for all hours worked by them over forty hours per week.

7.     Defendants charged all customers with delivery or "administrative" fee that Plaintiffs did not receive for themselves. This so called "administrative" or "delivery fee" prompted customers to refuse to tip Plaintiffs (as they had paid Defendants a "fee").

8.     The degree of control exercised by Defendants over Plaintiffs, the duration and permanence of Plaintiffs' duties and the vital role Plaintiffs' work constituted to Defendants' business indicate that Plaintiffs were in fact employees of Defendants within the meaning of the FLSA and NYLL.

9.     On many occasions, Plaintiffs did not retain the full amount of tips given to them by customers due to Defendants' misappropriation of their tips.

10.     Even though Defendants always charged its customers with a $2 delivery fee, this fee was never given to Plaintiffs.

11.     On several occasions, the Plaintiffs formally complained to Defendant Blum, regarding the Defendants' unlawful practices concerning their rate of pay.

12.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

13.     Because of Defendants' actions, Plaintiffs have suffered hardship and damages.

14.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.     Plaintiffs seek certification of their FLSA claims as a collective action on behalf of themselves individually and those other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216 (b).

## JURISDICTION AND VENUE

16.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the civil action herein arises under the laws of the United States, namely, the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. Additionally, this Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367(a).

### Personal Jurisdiction

17.     This Court may properly maintain personal jurisdiction over Defendants under Rule 4 of the Federal Rules of Civil Procedure because Defendants' contacts with this state and this judicial district are sufficient for exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

### Venue

18.     Venue is proper in the Southern District of New York under 8 U.S.C. §§ 1391 (b) (1) and (2) because Defendants reside and conduct business in this judicial district and because a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this judicial district.

## THE PARTIES

### (Plaintiffs)

### Alejandro Rivera

19.     Plaintiff Alejandro Rivera ("Rivera") is an adult individual residing in the state of New York, County of Queens.

20.     Rivera is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

21.     Rivera has been working for the Defendants from March 19, 2016 until the present date.

22.     Rivera is employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

23.     Rivera is employed as a delivery courier. His duties include picking up and delivering take-out orders placed by Defendant Relay's customers.

24.     Rivera regularly handles goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

25.     Defendants had no clocking system at the beginning of his employment with Defendants. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation to work shifts.

26.     For the period of his employment, Rivera worked about six days per week from 9a.m. to 3 p.m. and from 6 p.m. to 10 p.m. each day. Rivera was working 9 hours each day and was averaging around fifty-four (54) hours per week.

27.     Defendants repeatedly asked and permitted Rivera to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

28.     Until about March 2017 Rivera was being compensated at a rate of Six Dollars ($6) per hour. Starting March 2017. Defendants started paying Plaintiff at the rate of $7.50 per hour.

29.     Starting March 2017, Rivera was only asked and allowed to work less than 40 hours per week.

30.     Rivera was paid by direct deposit (cash) once a week.

31.     In addition, as a tipped employee, Rivera did not receive all the tips he was entitled to and an amount of approximately Fifty Dollars ($80) was misappropriated from his tips each week by the Management.

32.     Defendants have failed to pay Rivera spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Rivera worked more than ten (10) hours.

33.     Rivera was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

34.     Rivera was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

35.     Upon information and belief, while Defendants employed Rivera they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Perez of such rights.

36.     Throughout the duration of his employment, Rivera did not have any supervisory authority nor did he exercise discretion or independent judgment.

37.     Rivera consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

### Carlos Montiel

38.     Plaintiff Carlos Montiel ("Montiel") is an adult individual residing in the state of New York, County of Bronx.

39.     Montiel is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

40.     Montiel worked for the Defendants from November 2016 until March 2017.

41.     Montiel was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

42.     Montiel was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

43.     Montiel regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

44.     and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation to work shifts.

45.     For the period of his employment, Montiel worked 50 to 60 hours per week from 8 a.m. to 3 p.m. and from 6 p.m. to 11 p.m. each day.

46.     Unlike other employees, Montiel had a set schedule.

47.     Defendants asked Montiel work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

48.     Until March 2017, Montiel was being compensated at a rate of Six Dollars ($6) per hour. Starting on or about March 2017, Defendants changed the hourly pay rate to $7.50.

49.     Montiel was paid by direct deposit (cash) every week.

50.     In addition, as a tipped employee, Montiel did not receive all the tips he was entitled to and an amount of approximately One Hundred Dollars ($100) was misappropriated

from his tips each week by the Management. When Montiel had big orders, he never received the full amount of tips that he knew the customer gave to the delivery person.

51.     Defendants have failed to pay Montiel spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Montiel worked more than ten (10) hours.

52.     Montiel was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

53.     Montiel was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

54.     Upon information and belief, while Defendants employed Montiel, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Perez of such rights.

55.     Throughout the duration of his employment, Montiel did not have any supervisory authority nor did he exercise discretion or independent judgment..

56.     Montiel consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**Alfonso Gonzalez**

57.     Plaintiff Alfonso Gonzalez ("Gonzalez") is an adult individual residing in the state of New York, County of Bronx.

58.     Gonzalez is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

59.     Gonzalez worked for the Defendants from November 2015 until on or about December 2016.

60.     Gonzalez was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

61.     Gonzalez was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

62.     Gonzalez regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

63.     Defendants did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts

64.     For the period of his employment, Gonzalez worked around 45 hours per week and did not have a set schedule.

65.     Defendants repeatedly made Gonzalez work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

66.     Gonzalez was being compensated at a rate of Six Dollars ($6) per hour. Starting March 2017. Defendants started paying Plaintiff at the rate of $7.50 per hour.

67.     Gonzalez was paid by direct deposit (cash) every week.

68.     In addition, as a tipped employee, Gonzalez did not receive all the tips he was entitled to and an amount of approximately One Hundred and Fifty Dollars ($150) was

misappropriated from his tips each week by the Management. When Gonzalez had big orders, he never received the full amount of tips that he knew the customer gave to the delivery person.

69.     Additionally, there was a $2.00 "Delivery Fee" charged to customers that Gonzalez never received from Defendants.

70.     Defendants have failed to pay Gonzalez spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Gonzalez worked more than ten (10) hours.

71.     Gonzalez was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

72.     Gonzalez was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

73.     Upon information and belief, while Defendants employed Gonzalez, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Gonzalez of such rights.

74.     Throughout the duration of his employment, Gonzalez did not have any supervisory authority nor did he exercise discretion or independent judgment.

75.     Gonzalez consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

### Rigoberto P. Salas

76.     Plaintiff Rigoberto P. Salas ("Pina Salas") is an adult individual residing in the state of New York, County of Bronx.

77.     Pina Salas is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

78.     Pina Salas has been working for the Defendants from November 2016 until the present time.

79.     Pina Salas is employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

80.     Pina Salas is employed as a delivery courier. His duties include picking up and delivering take-out orders placed by Defendant Relay's customers.

81.     Pina Salas regularly handles goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

82.     Defendants had no clocking system and did not keep any time records until March 2017 when Defendants instituted a "reservation" system where Plaintiffs are to "reserve" shifts for the next day.

83.     For the period of his employment, Pina Salas worked around 75 -80 hours per week and sometimes worked 15 hours per day, 6 or 7 days per week.

84.     Defendants asked Pina Salas to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

85.     Pina Salas was compensated at a rate of Six Dollars ($6) per hour,   until March 2017. In March 2017, Defendants raised Pina Salas' rate to $7.50 per hour

86.     Pina Salas was paid by direct deposit cash) every week.

87.     In addition, as a tipped employee, Pina Salas did not receive all the tips he was entitled to and an amount of approximately Fifty Dollars ($50) was misappropriated from his tips each week by the Management. When Pina Salas had big orders, he never received the full amount of tips that he knew the customer gave to the delivery person.  If he asked Defendants about this missing amount, Defendants never had an explanation.

88.     Defendants have failed to pay Pina Salas spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Gonzalez worked more than ten (10) hours.

89.     Pina Salas was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

90.     Pina Salas was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

91.     Upon information and belief, while Defendants employed Pina Salas, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Pina Salas of such rights.

92.     Throughout the duration of his employment, Pina Salas did not have any supervisory authority nor did he exercise discretion or independent judgment.

93.     Pina Salas consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**Luis R. Herrera**

94.     Plaintiff Luis Ramirez Herrera ("Ramirez Herrera") is an adult individual residing in the state of New York, County of Bronx.

95.     Ramirez Herrera is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

96.     Ramirez Herrera worked for the Defendants from January 2013 until on or about march 2013 and again from April 2015 until May 8th 2017.

97.     Ramirez Herrera was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

98.     Ramirez Herrera was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

99.     Ramirez Herrera regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

100.     Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts

101.     From January 2013 until March 2013 Plaintiff Luis Ramirez Herrera worked 40 hours per week.

102.     From January 2015 until his departure in 2017 Plaintiff Luis Ramirez Herrera worked about 75 hours per week.

103.   Defendants scheduled Ramirez Herrera to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

104.   Ramirez Herrera was being compensated at a rate of Six Dollars ($6) per hour, until March 2017. In March 2017, Defendants raised Ramirez Herrera's rate to $7.50 per hour

105.   Ramirez Herrera was paid by direct deposit  (cash) every week.

106.   In addition, as a tipped employee, Ramirez Herrera did not receive all the tips he was entitled to and an amount of approximately one hundred ($100) was misappropriated from his tips each week by the Management. When Ramirez Herrera had big orders, he never received the full amount of tips that he knew the customer gave to the delivery person.

107.   Defendants have failed to pay Ramirez Herrera spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Gonzalez worked more than ten (10) hours.

108.   Ramirez Herrera was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

109.   Ramirez Herrera was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

110.   Upon information and belief, while Defendants employed Ramirez Herrera, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Ramirez of such rights.

111.    Throughout the duration of his employment, Ramirez Herrera did not have any supervisory authority nor did he exercise discretion or independent judgment.

112.    Ramirez Herrera consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

### Pedro Gonzalez

113.    Plaintiff Pedro Gonzalez ("Pedro") is an adult individual residing in the state of New York, County of Bronx.

114.    Pedro is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

115.    Pedro has worked for the Defendants from April 2016 until the present time.

116.    Pedro was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

117.    Pedro is employed as a delivery courier. His duties include picking up and delivering take-out orders placed by Defendant Relay's customers.

118.    Pedro regularly handles goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

119.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts

120.    From the beginning of his employment until on or about October 2016,  Pedro worked from 9:00am to 3:00pm and from 6pm to 11pm 6 to 7 days per week or about sixty (60) hours per week.

121.    From October 2016 until the present time, Pedro works from 9:00am to 3:00pm or about 30 hours per week.

122.    Defendants asked Pedro to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

123.    Pedro was being compensated at a rate of Six Dollars ($6) per hour, until March 2017 when his salary was raised to $7.50.

124.    Pedro was paid by direct deposit (cash) every week.

125.    In addition, as a tipped employee, Pedro did not receive all the tips he was entitled to and an amount of approximately Fifty Dollars ($50) was misappropriated from his tips each week by the Management. When Pedro had big orders, he never received the full amount of tips that he knew the customer gave to the delivery person.

126.    Defendants have failed to pay Pedro spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Gonzalez worked more than ten (10) hours.

127.    Pedro was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

128.    Pedro was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

129.    Upon information and belief, while Defendants employed Pedro, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Pedro of such rights.

130.    Throughout the duration of his employment, Pedro did not have any supervisory authority nor did he exercise discretion or independent judgment.

131.    Pedro consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

### Carlos Munoz Hernandez

132.    Plaintiff Carlos Munoz Hernandez ("Munoz Hernandez") is an adult individual residing in the state of New York, County of Queens.

133.    Munoz Hernandez is a covered employee within the meaning of the FLSA, 29 U.S.C.§ 203(e) and the NYLL § 190.

134.    Munoz Hernandez worked for the Defendants from February 2014 to May 2017

135.    Munoz Hernandez was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

136.    Munoz Hernandez was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

137.    Munoz Hernandez regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

138.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation to work shifts

139.    For the period of his employment, Munoz Hernandez worked six days per week from 9 a.m. to 11 p.m. Munoz Hernandez was working 12-15 hours each day and was averaging around sixty five o seventy five (65-75) hours per week.

140.    Defendants repeatedly permitted Munoz Hernandez to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

141.    Throughout the duration of his employment with Defendants, Munoz Hernandez was being compensated at a rate of Six Dollars ($6) per hour.

142.    Munoz Hernandez was paid by way of direct deposit (cash) once each week.

143.    In addition, as a tipped employee, Munoz Hernandez did not receive all the tips he was entitled to and an amount of approximately fifty dollars ($50) was misappropriated from his tips each week by the Management.

144.    Defendants have failed to pay Munoz Hernandez spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Munoz Hernandez worked more than ten (10) hours.

145.    Munoz Hernandez was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

146.    Munoz Hernandez was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

147.    Upon information and belief, while Defendants employed Munoz Hernandez, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Munoz Hernandez of such rights.

148.    Throughout the duration of his employment, Munoz Hernandez did not have any supervisory authority nor did he exercise discretion or independent judgment.

149.    Munoz Hernandez consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**Antonio Vivar**

150.    Plaintiff Antonio Vivar ("Vivar") is an adult individual residing in the state of New York, County of Queens.

151.    Vivar is a covered employee within the meaning of the FLSA, 29 U.S.C.§ 203(e) and the NYLL § 190.

152.    Vivar worked for the Defendants from March 2015 until September 2015 and again from March 2016 until the present time.

153.    Vivar is employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

154.    Vivar is employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

155.    Vivar regularly handles goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

156.    Defendants had no clocking system and did not keep any time records during the relevant time period. Mr. Vivar had to sign "something" on an iPad when he worked. He does not know if this was Defendant's way of keeping track of his hours.

157.    For the period of his employment, Vivar worked six days per week from 9 a.m. or 11:00am to 11 p.m. Vivar was working 12-14 hours each day and was averaging around eighty (80) hours per week.

158.    Defendants repeatedly suffered or permitted Vivar to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

159.    From the beginning of employment with Defendants until on or about March 2017, Vivar was being compensated at a rate of Six Dollars ($6) per hour. Starting March 2017, Vivar was being compensated at $7.50 per hour.

160.    Vivar was paid by way of direct deposit (cash) once each week.

161.    In addition, as a tipped employee, Vivar did not receive all the tips he was entitled to and an amount of approximately fifty dollars ($50) was misappropriated from his tips each week by the Management.

162.    Defendants have failed to pay Vivar spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Vivar worked more than ten (10) hours.

163.    Vivar was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

164.    Vivar was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

165.    Upon information and belief, while Defendants employed Vivar, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Vivar of such rights.

166.    Throughout the duration of his employment, Vivar did not have any supervisory authority nor did he exercise discretion or independent judgment.

167.    Vivar consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**<u>Osman Samayoa</u>**

168.    Plaintiff Osman Samayoa ("Samayoa") is an adult individual residing in the state of New York, County of Queens.

169.    Samayoa is a covered employee within the meaning of the FLSA, 29 U.S.C.§ 203(e) and the NYLL § 190.

170.    Samayoa worked for the Defendants from September 2016 until the present time.

171.    Samayoa is employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

172.    Samayoa was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

173.    Samayoa regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

174.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts

175.    From September 2016 until December 2016 Samayoa worked five days per week from 5 pm. to 11 p.m. Samayoa was working 6 hours each day and was averaging around eighty-four (30) hours per week.

176.    From December 2016   until April 2017 Samayoa worked six days per week from 9 am. to 9 p.m. Samayoa was working 6 hours each day and was averaging around sixty-six (66) hours per week.

177.    Defendants repeatedly suffered or permitted Samayoa to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

178.    Until on or about March 2017, Samayoa was being compensated at a rate of Six Dollars ($6) per hour. Starting on or about March 2017, Defendants raised his salary to $7.50.

179.    Samayoa was paid by way of direct deposit once each week.

180.    In addition, as a tipped employee, Samayoa did not receive all the tips he was entitled to and an amount of approximately Fifty Dollars ($50) was misappropriated from his tips each week by the Management.

181.    Defendants have failed to pay Samayoa spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Samayoa worked more than ten (10) hours.

182.    Samayoa was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

183.    Samayoa was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

184.    Upon information and belief, while Defendants employed Samayoa, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Samayoa of such rights.

185.    Throughout the duration of his employment, Samayoa did not have any supervisory authority nor did he exercise discretion or independent judgment.

186.    Samayoa consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**<u>Sergio Juarez</u>**

187.    Plaintiff Sergio Juarez ("Juarez") is an adult individual residing in the state of New York, County of Queens.

188.    Juarez is a covered employee within the meaning of the FLSA, 29 U.S.C.§ 203(e) and the NYLL § 190.

189.    Juarez has worked for the Defendants from December 2016 and continues to work for Defendants until now.

190.    Juarez is employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

191.    Juarez is employed as a delivery courier. His duties include picking up and delivering take-out orders placed by Defendant Relay's customers.

192.    Juarez regularly handles goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

193.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts

194.    In December 2016 Juarez worked five days per week. Juarez was working 12 hours each day and was averaging around sixty (60) hours per week.

195.    Defendants repeatedly suffered or permitted Juarez to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

196.    Throughout the duration of his employment with Defendants, Juarez was being compensated at a rate of Six Dollars ($6) per hour.

197.    Juarez was paid by way of direct deposit (cash) once each week.

198.    In addition, as a tipped employee, Juarez did not receive all the tips he was entitled to and an amount of approximately One Fifty Dollars ($50) was misappropriated from his tips each week by the Management.

199.    Defendants have failed to pay Juarez spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Juarez worked more than ten (10) hours.

200.    Juarez was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

201.    Juarez was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

202.    Upon information and belief, while Defendants employed Juarez, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Juarez of such rights.

203.    Throughout the duration of his employment, Juarez did not have any supervisory authority nor did he exercise discretion or independent judgment.

204.    Juarez consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

## Jesus Ortiz

205.    Plaintiff Jesus Ortiz ("Jesus Ortiz") is an adult individual residing in the state of New York, County of Queens.

206.    Jesus Ortiz is a covered employee within the meaning of the FLSA, 29 U.S.C.§ 203(e) and the NYLL § 190.

207.    Jesus Ortiz worked for the Defendants from December 2016 until the present time.

208.    Jesus Ortiz is employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th

floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

209.    Jesus Ortiz is employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

210.    Jesus Ortiz regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

211.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts

212.    For the period of his employment, Jesus Ortiz worked six days per week from 8 a.m. to 9 p.m. Ortiz was working 12 to 14 hours each day and was averaging around seventy-two (72) hours per week.

213.    Defendants repeatedly suffered or permitted Ortiz to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

214.    Throughout the duration of his employment with Defendants, Jesus Ortiz was being compensated at a rate of Six Dollars ($6) per hour.

215.    Ortiz was paid by way of direct deposit (cash) once each week.

216.    In addition, as a tipped employee, Jesus Ortiz did not receive all the tips he was entitled to and an amount of approximately fifty dollars ($50) was misappropriated from his tips each week by the Management.

217. Defendants have failed to pay Jesus Ortiz spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Ortiz worked more than ten (10) hours.

218. Jesus Ortiz was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

219. Jesus Ortiz was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

220. Upon information and belief, while Defendants employed Jesus Ortiz, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Jesus Ortiz of such rights.

221. Throughout the duration of his employment, Ortiz did not have any supervisory authority nor did he exercise discretion or independent judgment.

222. Jesus Ortiz consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**<u>Andres Fuentes</u>**

223. Plaintiff Andres Fuentes ("Fuentes") is an adult individual residing in the state of New York, County of Queens.

224. Fuentes is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

225. Fuentes has been working for the Defendants from June 2015 until April 17th, 2017.

226.    Fuentes was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

227.    Fuentes was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

228.    Fuentes regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

229.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts

230.    From June 2015 until October 2016, Fuentes worked five days per week from 9 a.m. to 2 p.m. each day. Fuentes was working 5 or 6 hours each day and was averaging around thirty (30) hours per week.

231.    From October 2016 until April 2017, Fuentes worked five days per week from 9 a.m. to 8 p.m. each day. Fuentes was working 10 hours each day and was averaging around fifty (50) hours per week.

232.    Defendants repeatedly suffered or permitted Fuentes to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

233.    Throughout the duration of his employment with Defendants, Fuentes was being compensated at a rate of Six Dollars ($6) per hour.

234.    In addition, as a tipped employee, Fuentes did not receive all the tips he was entitled to and an amount of Fifty Dollars ($50) was misappropriated from his tips each week by the Management.

235.    Defendants have failed to pay Fuentes spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Fuentes worked more than ten (10) hours.

236.    Fuentes was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

237.    Fuentes was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

238.    Upon information and belief, while Defendants employed Fuentes, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Fuentes of such rights.

239.    Throughout the duration of his employment, Fuentes did not have any supervisory authority nor did he exercise discretion or independent judgment.

240.    Fuentes consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**Jorge Ortiz**

241.    Plaintiff Jorge Ortiz ("Ortiz") is an adult individual residing in the state of New York, County of Queens.

242.    Ortiz is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

243.    Ortiz worked for the Defendants from February 2016 until April 2017.

244.    Ortiz was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

245.    Ortiz was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

246.    Ortiz regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

247.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts

248.    For the period of his employment, Ortiz worked six days per week from 10 a.m. to 10 p.m. each day. Ortiz worked for approximately 10 hours per day and approximately sixty-six (66) hours per week.

249.    Defendants repeatedly suffered or permitted Ortiz to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

250.    Throughout the duration of his employment with Defendants, Ortiz was being compensated at a rate of Six Dollars ($6) per hour.

251.    In addition, as a tipped employee, Ortiz did not receive all the tips he was entitled to and an amount of One Hundred and Fifty Dollars ($50) was misappropriated from his tips each week by the Management.

252.    Defendants have failed to pay Ortiz spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Ortiz worked more than ten (10) hours.

253.    Ortiz was paid by cash via direct deposit once a week.

254.    Ortiz was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

255.    Ortiz was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

256.    Upon information and belief, while Defendants employed Ortiz, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Ortiz of such rights.

257.    Throughout the duration of his employment, Ortiz did not have any supervisory authority nor did he exercise discretion or independent judgment.

258.    Jorge Ortiz consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

## Noe Escamilla

259.    Plaintiff Noe Escamilla ("Escamilla") is an adult individual residing in the state of New York, County of Queens.

260.    Ortiz is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

261.    Escamilla has been working for the Defendants from October 2016 till the present date.

262.    Escamilla is employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

263.    Escamilla is employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

264.    Escamilla regularly handles goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

265.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation to work shifts.

266.    For the period of his employment, Escamilla worked six days per week from 11a.m. to 11 p.m. each day. Escamilla worked for approximately 10-12 hours per day and approximately seventy to seventy-two (70-72) hours per week.

267.    Defendants repeatedly suffered or permitted Escamilla to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

268.    Throughout the duration of his employment with Defendants, Escamilla was being compensated at a rate of Six Dollars ($6) per hour.

269.    In addition, as a tipped employee, Escamilla did not receive all the tips he was entitled to and an amount of Fifty Dollars ($50) was misappropriated from his tips each week by the Management.

270.    Defendants have failed to pay Escamilla spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Escamilla worked more than ten (10) hours.

271.    Escamilla was paid by cash (via direct deposit) once a week.

272.    Escamilla was not provided with a notice in English or Spanish (Plaintiff's primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

273.    Escamilla was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

274.    Upon information and belief, while Defendants employed Escamilla, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Escamilla of such rights.

275.    Throughout the duration of his employment, Escamilla did not have any supervisory authority nor did he exercise discretion or independent judgment.

276.    Noe Escamilla consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**<u>Hugo Sapon</u>**

277.    Plaintiff Hugo Sapon ("Sapon") is an adult individual residing in the state of New York, County of Queens.

278.    Sapon is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

279.    Sapon has been working for the Defendants from November 2016 till the present date.

280.    Sapon is employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

281.    Sapon is employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

282.    Sapon regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

283.    Defendants had no clocking system and did not keep any time records during the relevant time. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation to work shifts.

284.    For the period of his employment, Sapon worked six days per week from 8 a.m. to 4 p.m. each day. Sapon worked for approximately 8 hours per day and approximately forty (40) hours per week.

285.    Throughout the duration of his employment with Defendants, Sapon was being compensated at a rate of Six Dollars ($6) per hour.

286.    In addition, as a tipped employee, Sapon did not receive all the tips he was entitled to and an amount of One Hundred and Fifty Dollars ($150) was misappropriated from his tips each week by the Management.

287.    Sapon was paid by cash via direct deposit once a week.

288.    Sapon was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

289.    Sapon was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

290.    Upon information and belief, while Defendants employed Sapon, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Sapon of such rights.

291.    Throughout the duration of his employment, Sapon did not have any supervisory authority nor did he exercise discretion or independent judgment.

292.    Jorge Sapon consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

## **Jose Rivera**

293.    Plaintiff Jose Rivera ("Rivera") is an adult individual residing in the state of New York, County of Queens.

294.    Rivera is a covered employee within the meaning of the FLSA, 29 U.S.C.§ 203(e) and the NYLL § 190.

295.    Rivera worked for the Defendants from on or about February 2016 to December 2016.

296.    Rivera was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

297.    Rivera was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

298.    Rivera regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

299.    Defendants had no clocking system and did not keep any time records during the relevant time period.

300.    For the period of his employment, Rivera worked six days per week from 9 a.m. to 11 p.m. Rivera was working 14 hours each day and was averaging around eighty-four (84) hours per week.

301.    Defendants repeatedly suffered or permitted Rivera to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

302.    Throughout the duration of his employment with Defendants, Rivera was being compensated at a rate of Six Dollars ($6) per hour.

303.    Rivera was paid by way of direct deposit once each week.

304.    In addition, as a tipped employee, Rivera did not receive all the tips he was entitled to and an amount of approximately fifty dollars ($50) was misappropriated from his tips each week by the Management.

305.    Defendants have failed to pay Rivera spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Rivera worked more than ten (10) hours.

306.    Rivera was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

307.    Rivera was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

308.    Upon information and belief, while Defendants employed Rivera, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Rivera of such rights.

309.    Throughout the duration of his employment, Rivera did not have any supervisory authority nor did he exercise discretion or independent judgment.

310.    Jose Rivera consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

### Irael Jiguan

311.    Plaintiff Irael Jiguan ("Jiguan") is an adult individual residing in the state of New York, County of Queens.

312.    Jiguan is a covered employee within the meaning of the FLSA, 29 U.S.C.§ 203(e) and the NYLL § 190.

313.    Jiguan worked for the Defendants from January 2016 to June 2016.

314.    Jiguan was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

315.    Jiguan was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

316.    Jiguan regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

317.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation to work shifts.

318.    For the period of his employment, Jiguan worked six days per week working 10-12 hours each day and was averaging around sixty-six (66) hours per week.

319.    Defendants repeatedly suffered or permitted Jiguan to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

320.    Throughout the duration of his employment with Defendants, Jiguan was being compensated at a rate of Six Dollars ($6) per hour.

321.    Jiguan was paid by way of direct deposit (cash) once each week.

322.    In addition, as a tipped employee, Jiguan did not receive all the tips he was entitled to and an amount of approximately fifty dollars ($50) was misappropriated from his tips each week by the Management.

323.    Defendants have failed to pay Jiguan spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Jiguan worked more than ten (10) hours.

324.    Jiguan was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

325.    Jiguan was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

326.    Upon information and belief, while Defendants employed Jiguan, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Jiguan of such rights.

327.    Throughout the duration of his employment, Jiguan did not have any supervisory authority nor did he exercise discretion or independent judgment.

328.    Jiguan consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**Juan J. Lopez**

329.    Plaintiff Juan J Lopez ("Lopez") is an adult individual residing in the state of New York, County of Queens.

330.    Lopez is a covered employee within the meaning of the FLSA, 29 U.S.C.§ 203(e) and the NYLL § 190.

331.    Lopez worked for the Defendants from November 2015 until February 2017.

332.    Lopez was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

333.    Lopez was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

334.    Lopez regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

335.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts.

336.    For the period of his employment, Lopez worked six days per week from 8 a.m. to 8p.m. Lopez was working 12 hours each day and was averaging around seventy-two (72) hours per week.

337.    Defendants repeatedly suffered or permitted Lopez to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

338.    Throughout the duration of his employment with Defendants, Lopez was being compensated at a rate of Six Dollars ($6) per hour.

339.    Lopez was paid by way of direct deposit once each week.

340.    In addition, as a tipped employee, Lopez did not receive all the tips he was entitled to and an amount of approximately fifty dollars ($50) was misappropriated from his tips each week by the Management.

341.    Defendants have failed to pay Lopez spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Lopez worked more than ten (10) hours.

342.    Lopez was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

343.    Lopez was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

344.    Upon information and belief, while Defendants employed Lopez, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Lopez of such rights.

345.    Throughout the duration of his employment, Lopez did not have any supervisory authority nor did he exercise discretion or independent judgment.

346.    Juan J. Lopez consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

### Justino Cuenca Ortega

347.    Plaintiff Justino Cuenca Ortega ("Ortega") is an adult individual residing in the state of New York, County of Queens.

348.    Ortega is a covered employee within the meaning of the FLSA, 29 U.S.C.§ 203(e) and the NYLL § 190.

349.    Ortega worked for the Defendants from November 2015 to April 2017.

350.     Ortega was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

351.     Ortega was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

352.     Ortega regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

353.     Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts.

354.     For the period of his employment, Ortega worked six days per week from 9 a.m. to 11 p.m. Ortega was working 12 to 14 hours each day and was averaging around sixty to seventy two (60-72) hours per week.

355.     Defendants repeatedly suffered or permitted Ortega to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

356.     Throughout the duration of his employment with Defendants, Ortega was being compensated at a rate of Six Dollars ($6) per hour.

357.     Ortega was paid by way of direct deposit once each week.

358.     In addition, as a tipped employee, Ortega did not receive all the tips he was entitled to and an amount of approximately fifty dollars ($50) was misappropriated from his tips each week by the Management.

359.    Defendants have failed to pay Ortega spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Ortega worked more than ten (10) hours.

360.    Ortega was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

361.    Ortega was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

362.    Upon information and belief, while Defendants employed Ortega, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Ortega of such rights.

363.    Throughout the duration of his employment, Ortega did not have any supervisory authority nor did he exercise discretion or independent judgment.

364.    Ortega consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**Aurelio Salas Hernandez**

365.    Plaintiff Aurelio Salas Hernandez ("Salas Hernandez") is an adult individual residing in the state of New York, County of Queens.

366.    Salas Hernandez is a covered employee within the meaning of the FLSA, 29 U.S.C.§ 203(e) and the NYLL § 190.

367.    Salas Hernandez worked for the Defendants from August 2016 until April 2017.

368.    Salas Hernandez was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

369.    Salas Hernandez was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

370.    Salas Hernandez regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

371.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts.

372.    For the period of his employment, Salas Hernandez worked five to six days per week from 8 a.m. to 11 p.m.  Salas Hernandez was working 9-12 hours each day and was averaging around fifty-five to seventy (55-70) hours per week.

373.    Defendants repeatedly suffered or permitted Salas Hernandez to work over forty (40) hours per week without paying him the appropriate premium overtime pay of one and one half times the statutory minimum.

374.    Throughout the duration of his employment with Defendants, Salas Hernandez was being compensated at a rate of Six Dollars ($6) per hour.

375.    Salas Hernandez was paid by way of direct deposit once each week.

376.    In addition, as a tipped employee, Salas Hernandez did not receive all the tips he was entitled to and an amount of approximately fifty dollars ($50) was misappropriated from his tips each week by the Management.

377.    Defendants have failed to pay Salas Hernandez spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Salas Hernandez worked more than ten (10) hours.

378.    Salas Hernandez was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

379.    Salas Hernandez was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

380.    Upon information and belief, while Defendants employed Salas Hernandez, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Salas Hernandez of such rights.

381.    Throughout the duration of his employment, Salas Hernandez did not have any supervisory authority nor did he exercise discretion or independent judgment.

382.    Salas Hernandez consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**Jorge Alcaraz**

383.    Plaintiff Jorge Nicolas Ortiz Lopez ("Alcaraz") is an adult individual residing in the state of New York, County of Queens.

384.    Alcaraz is a covered employee within the meaning of the FLSA, 29 U.S.C.§ 203(e) and the NYLL § 190.

385.    Alcaraz worked for the Defendants from December 2016 until the present time.

386.     Alcaraz was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

387.     Alcaraz was employed as a delivery courier. His duties included picking up and delivering take-out orders placed by Defendant Relay's customers.

388.     Alcaraz regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

389.     Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation to work shifts.

390.     For the period of his employment, Alcaraz worked five days per week from 9 a.m. to 11 p.m. Alcaraz was working 5-6 hours each day and was averaging around 25-30 hours per week.

391.     Alcaraz was being compensated at a rate of Six Dollars ($6) per hour. Defendants started paying Plaintiff at the rate of $7.50 per hour.

392.     Alcaraz was paid by way of direct deposit once each week.

393.     In addition, as a tipped employee, Alcaraz did not receive all the tips he was entitled to and an amount of approximately fifty dollars ($50) was misappropriated from his tips each week by the Management.

394.     Alcaraz was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

395.    Alcaraz was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

396.    Upon information and belief, while Defendants employed Alcaraz, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Alcaraz of such rights.

397.    Throughout the duration of his employment, Alcaraz did not have any supervisory authority nor did he exercise discretion or independent judgment.

398.    Jorge Alcaraz consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**<u>David Rojas</u>**

399.    Plaintiff David Rojas ("Rojas") is an adult individual residing in the state of New York, County of Queens.

400.    Rojas is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

401.    Rojas worked for the Defendants from December 26, 2015 to  April 21, 2017.

402.    Rojas was employed at Relay Delivery, Inc., owned by Defendants, with offices located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th floor, New York, NY 10016. The Defendants provided on-demand delivery services for restaurants.

403.    Rojas was employed as a delivery courier. His duties included, picking up and delivering take-out orders placed by Defendant Relay's customers.

404.    Rojas regularly handled goods in interstate commerce, such as food and drinks produced with ingredients outside the State of New York.

405.    Defendants had no clocking system and did not keep any time records during the relevant time period. However, on or about March 2017, the Defendants started using a "reservation" system, wherein Plaintiffs had to make a reservation in order to work shifts.

406.    For the period of his employment, Rojas worked six days a week. From Monday to Friday each week, Rojas worked from 5 p.m. to 10 p.m., and on Saturdays he worked from 3 p.m. to 10 p.m. each day. Rojas was averaging around thirty-two (32) hours per week.

407.    Throughout the duration of his employment with Defendants, Rojas was being compensated at a rate of Six Dollars ($6) per hour.

408.    In addition, as a tipped employee, Rojas did not receive all the tips he was entitled to and an amount of approximately Fifty Dollars ($50) was misappropriated from his tips each week by the Management.

409.    Rojas was not provided with a notice in English or Spanish (Plaintiffs primary language) containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

410.    Rojas was never provided with wage statements detailing dates worked, money received and the employer's details at any point during the time of his employment with Defendants.

411.    Upon information and belief, while Defendants employed Rojas, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Rojas of such rights.

412.    Throughout the duration of his employment, Rojas did not have any supervisory authority nor did he exercise discretion or independent judgment.

413.    Rojas consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

**(Corporate Defendant)**

**Relay Delivery, Inc.**

414.    Relay Delivery, Inc. ("Relay") is a foreign business corporation organized and existing under the laws of the State of Delaware.

415.    On October 24, 2014, Relay designated the New York Secretary of State as agent of the corporation upon whom process against it may be served in New York.

416.    Relay's entire business consists of providing on-demand delivery services for restaurants. Its main offices are located at 399 S. 5th Street, #2, Brooklyn, NY 11211 and 440 Park Avenue South, 14th Floor, New York, NY 10016.

417.    Relay operates seven (7) days per week. It has approximately 200-500 full-time employees.

418.    At all relevant times, Relay was a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and the NYLL § 190.

419.    At all relevant times, Relay maintained control, oversight, and direction over the Plaintiffs, including timekeeping, payroll and other employment practices that applied to them.

420.    At all relevant times, Relay was "an enterprise engaged in commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A) because its employees were delivering food made from ingredients that were manufactured out of state and distributed in New York. In addition, Relay conducted business with vendors and other businesses outside the State of New

York and engaged in credit card transactions involving banks and other institutions outside the State of New York.

421.     Upon information and belief, at all relevant times, Relay's annual gross volume of sales made, or business done, was not less than $500,000.00, exclusive of separate retail excise taxes, within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(a)(ii).

**(Individual Defendants)**

422.     At all relevant times, Alex Blum, Michael Chevett, and Relay Delivery, Inc. were joint employers of Plaintiffs, acted in the interest of each other with respect to all employees, and had common policies and practices as to wages and hours, pursuant to 29 C.F.R. § 791.2.

**Alex Blum**

423.     Upon information and belief, at all relevant times, Alex Blum ("Blum") was the founder, owner, principal, authorized operator, manager, shareholder and/or agent of Corporate Defendant.

424.     At all relevant times throughout Plaintiffs' employment, Blum had the discretionary power to create and enforce personnel decisions on behalf of the Corporate Defendant, including but not limited to: hiring and terminating employees; setting and authorizing issuance of wages; maintaining employee records; setting Plaintiffs' schedules; and otherwise controlling the terms and conditions for the Plaintiffs while they were employed by Defendants.

425.     At all relevant times throughout Plaintiffs' employment, Blum was actively involved in the day-to-day operations of the Corporate Defendant.

426.     At all relevant times throughout Plaintiffs' employment, Blum was a "covered employer" within the meaning of the FLSA and the NYLL, and employed or jointly employed

Plaintiffs, and is personally liable for the unpaid wages sought herein, pursuant to 29 U.S.C. §203(d).

### Michael Chevett

427.     Upon information and belief, at all relevant times, Michael Chevett ("Chevett") was the founder, owner, principal, authorized operator, manager, shareholder and/or agent of Corporate Defendant.

428.     At all relevant times throughout Plaintiffs' employment, Chevett had the discretionary power to create and enforce personnel decisions on behalf of the Corporate Defendant, including but not limited to: hiring and terminating employees; setting and authorizing issuance of wages; maintaining employee records; setting Plaintiffs' schedules; and otherwise controlling the terms and conditions for the Plaintiffs while they were employed by Defendants.

429.     At all relevant times throughout Plaintiffs' employment, Chevett was actively involved in the day-to-day operations of the Corporate Defendant.

430.     At all relevant times throughout Plaintiffs' employment, Chevett was a "covered employer" within the meaning of the FLSA and the NYLL, and employed or jointly employed Plaintiffs, and is personally liable for the unpaid wages sought herein, pursuant to 29 U.S.C. §203(d).

### COLLECTIVE ACTION ALLEGATIONS

431.     Pursuant to 29 U.S.C. §§ 203, 206, 207 and 216(b), Plaintiffs bring their First, Second, and Third Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

All persons employed by Defendants at any time since July 5, 2013, and through the entry of judgment in this case (the "Collective Action Period") who worked as delivery couriers and all other non-management employees of Defendants (the "Collective Action Members").

432.    A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subject to Defendants' illegal policies of failing to pay minimum wage for all hours worked and overtime premiums for work performed in excess of forty (40) hours each week. In addition, Defendants had a common practice of misappropriating the cash tips of tipped employees.

433.    Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

434.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### Fair Labor Standards Act – Minimum Wages

435.    Plaintiffs, on behalf of themselves and the Collective Action Members, reallege and incorporate by reference the allegations made in all preceding paragraphs as if fully set forth herein.

436.    At all relevant times, Plaintiffs and the Collective Action Members were employees and employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d),(e)(1), and (g).

437.   At all times relevant, Defendants have been employers of Plaintiffs and the Collective Action Members, and were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§203 (s)(1) and 206 (a).

438.   Defendants were required to pay directly to Plaintiffs, and the Collective Action Members, the applicable Federal minimum wage rate for all hours worked pursuant to 29 U.S.C. § 206.

439.   Defendants failed to pay Plaintiffs, and the Collective Action Members, their earned minimum wages for all hours worked to which they were entitled to under the FLSA.

440.   Instead, Defendants paid the Plaintiffs and the Collective Action Members, an rate of less than the applicable minimum wage.

441.   As a result of Defendants' violations of the FLSA, Plaintiffs and the Collective Action Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, reasonable attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §216 (b).

442.   Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware, or should have been aware, that the practices described in this Complaint were unlawful.

443.   Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of the Plaintiffs and the Collective Action Members.

444.   Defendants failed to post or keep posted conspicuous notices of Plaintiffs' rights as required by the U.S. Department of Labor pursuant to 29 C.F.R. § 516.4, further evincing Defendants' lack of good faith.

445.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255(a).

## SECOND CAUSE OF ACTION

### Fair Labor Standards Act – Unpaid Overtime Wages

446.    Plaintiffs and the Collective Action Members reallege and incorporate by reference the allegations made in all preceding paragraphs as if fully set forth herein.

447.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 (a)(1) and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the Collective Action Members.

448.    Defendants have failed to pay Plaintiffs and the Collective Action Members overtime wages at a rate of one and one-half times the regular rate at which they were employed for but under no instance less than one and one-half times the statutory minimum wage for all of the hours that they worked in excess of forty (40) hours per workweek.

449.    As a result of Defendants' violations of the FLSA, Plaintiffs and the Collective Action Members have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216 (b).

## THIRD CAUSE OF ACTION

### Fair Labor Standards Act - Misappropriation of tips

450.    Plaintiffs and the Collective Action Members reallege and incorporate by reference all allegations in all preceding paragraphs.

451.    The wage payment provisions of the FLSA, 29 U.S.C. § 203(m) and the supporting federal regulations 29 C.F.R. §§ 531.50 et seq. apply to Defendants, and protect Plaintiffs and the Collective Action Members.

452.    Defendants misappropriated an amount of approximately Fifty Dollars ($50) to One Hundred Fifty dollars ($50) each week from the tips of each of the Plaintiffs.

453.    Because of Defendants' continuous and willful violations of the FLSA, 29 U.S.C. § 203(m) and the supporting federal regulations 29 C.F.R. §§ 531.50 et seq., Plaintiffs and the Collective Action Members are entitled to damages for the value of the misappropriated gratuities, liquidated damages as provided for by the 29 U.S.C. § 216(b), reasonable attorneys' fees, and costs.

### FOURTH CAUSE OF ACTION

### New York Labor Law – Minimum Wage

454.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

455.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

456.    At all relevant times referenced herein, Plaintiffs have been employees of Defendants, and Defendants have been employers of Plaintiffs within the meaning of the NYLL §§ 190, 651 (5), 652, and the supporting New York State Department of Labor Regulations.

457.    The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants, and protect Plaintiffs.

458.    From December 31, 2014, to December 30, 2015, the minimum hourly wage in the State of New York was $8.75, and from December 31, 2015 onwards, the minimum hourly

wage in the State of New York is $9.00 pursuant to NYLL § 652 and the New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142-2.1.

459.    Defendants were required to pay Plaintiffs no less than the applicable statutory minimum wage for all hours worked under the NYLL § 652 and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142-2.1.

460.    Through their knowing and intentional failure to pay minimum hourly wages to Plaintiffs, Defendants have violated the NYLL Article 19, §§ 650 et seq., and 12 N.Y.C.R.R. Part 142-2.1.

461.    Defendants also failed to post conspicuous notices of the Plaintiffs' rights under the law, as required by the NYLL § 661 and the New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142-2.8, further evincing Defendants' lack of good faith.

462.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of NYLL § 663.

463.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, pursuant to NYLL § 198 (1-a).

## **FIFTH CAUSE OF ACTION**

### **New York Labor Law – Unpaid Overtime wages**

464.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

465.    The overtime wage provisions as set forth in NYLL §§ 190 et seq. and the supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs.

466.    Defendants have failed to pay Plaintiffs proper overtime which they were entitled to at a wage rate of one and one-half times the employees' regular rate but under no instance less than one and one-half times the statutory minimum wage as defined by the New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142-2.2.

467.    Through their knowing or intentional failure to pay Plaintiffs proper overtime wages for hours worked in excess of forty (40) hours per workweek, Defendants have violated the NYLL §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

468.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of NYLL § 663.

469.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, pre-judgment and post-judgment interest, pursuant to NYLL § 198 (1-a).

## SIXTH CAUSE OF ACTION

### New York Labor Law- Spread-of-Hours Pay

470.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

471.    The spread-of-hours provisions as set forth in NYLL §§ 190 et seq. and the supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs.

472.    Defendants have failed to pay Plaintiffs spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Plaintiffs worked more than ten (10) hours, as defined by the New York State Department of Labor regulations, including but not limited to 12 N.Y.C.R.R. Part 142-2.4.

473.    Through their knowing or intentional failure to pay Plaintiffs spread-of-hours compensation, Defendants have willfully violated the NYLL §§ 190 *et seq.,* and the supporting New York State Department of Labor Regulations.

474.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid spread-of-hours pay, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, pursuant to NYLL § 198 (1-a).

<u>**SEVENTH CAUSE OF ACTION**</u>

**New York Labor Law- Misappropriation of tips**

475.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

476.    The wage payment provisions of Article 6 of the NYLL and the supporting New York State Department of Labor Regulations 12 N.Y.C.R.R. Part 142 et seq. apply to Defendants, and protect Plaintiffs.

477.    Defendants were prohibited from demanding, accepting or retaining, directly or indirectly, any part of the gratuities received by Plaintiffs pursuant to NYLL Article 6, § 196-d 14 and 12 N.Y.C.R.R. §§ 142-2.21.

478.    Defendants misappropriated an amount of approximately Fifty Dollars ($50) to Fifty dollars ($50) each week from the tips of each of the Plaintiffs.

479. Upon information and belief, Defendants failed to establish, maintain and preserve for at least six years accurate tip records showing the amount, shares and daily log of tips collected by each employee at each position in violation of 12 N.Y.C.R.R. § 142-2.1.

480. As a result of Defendants' continuous and willful violations of the NYLL § 196-d and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 et seq., Plaintiffs are entitled to damages for the value of the misappropriated gratuities, liquidated damages as provided for by NYLL § 198(1-a), reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## EIGHTH CAUSE OF ACTION

### New York Labor Law– Failure to Provide Notice

481. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs

482. Defendants have failed to provide Plaintiffs, at the time of hiring, a notice containing the rate of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular pay day designated by the employer; the physical address of the employer's main office or principal place of business; the telephone number of the employer, and anything otherwise required by law, in violation of NYLL § 195(1).

483. Due to Defendants' violations of the NYLL § 195(1), Plaintiffs are entitled to recover from Defendants statutory damages of Fifty dollars ($50) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000) pursuant to NYLL § 198 (1-b).

## NINTH  CAUSE OF ACTION

### New York Labor Law– Failure to Provide Wage Statements

484.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

485.    Defendants have failed to provide Plaintiffs with accurate wage statements listing their rate of pay; basis of pay; the period covered; and overtime pay, in violation of NYLL § 195(3).

486.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants statutory damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), pursuant to NYLL § 198 (1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiff in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA was willful as

to Plaintiffs and the FLSA class members;

(f)    Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiff and the FLSA class members liquidated damages in an amount equal to 100% of her damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

(i)    Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

(j)    Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs and the members of the FLSA Class;

(k)    Declaring that Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiff' and the FLSA class members' compensation, hours, wages; and any deductions or credits taken against wages;

(l)    Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs and the FLSA class members;

(m)    Awarding Plaintiff and the FLSA class members damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken

against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs and the FLSA class members liquidated damages in an

amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of

hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(o)     Awarding Plaintiffs and the FLSA and class members pre-judgment and post-

judgment interest as applicable;

(p)     Awarding Plaintiffs and the FLSA class members the expenses incurred in this

action, including costs and attorney's fees; and

(q)     All such other and further relief as the Court deems just and proper.


Dated: New York NY 10004
July 5th, 2017

Respectfully submitted,
**LINA FRANCO LAW, PC**

By:Lina Franco (LF-1102)
Lina Franco Law, P.C.
42 Broadway, Suite 12-126
New York, New York 10004
www.LinaFrancoLawPC.com
Tel (800) 933-5620