UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEJANDRO RIVERA, CARLOS MONTIEL, ALFONSO GONZALEZ, RIGOBERTO SALAS, LUIS RAMIREZ HERRERA, PEDRO GONZALEZ, CARLOS MUNOZ HERNANDEZ, ANTONIO VIVAR, OSMAN SAMAYOA, SERGIO JUAREZ, JESUS ORTIZ, ANDRES FUENTES, JORGE ORTIZ, NOE ESCAMILLA, HUGO SAPON, JOSE RIVERA, GUSTAVO JUAREZ, IRAEL JIGUAN, JUAN J. LOPEZ, JUSTINO CUENCA, AURELIO SALAS, JORGE ALCARAZ AND DAVID ROJAS, *individually and on behalf of others similarly situated*,

Plaintiffs,

-against-

RELAY DELIVERY, INC., ALEX BLUM, AND MICHAEL CHEVETT, *IN THEIR INDIVIDUAL AND PROFESSIONAL CAPACITY*,

Defendants.

Civil Action No. 17-cv-05012 (JLC)

ECF Case

## FIRST REVISED SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs Alejandro Rivera, Carlos Montiel, Alfonso Gonzalez, Rigoberto Salas, Luis Ramirez Herrera, Pedro Gonzalez, Carlos Munoz Hernandez, Antonio Vivar, Osman Samayoa, Sergio Juarez, Jesus Ortiz, Andres Fuentes, Jorge Ortiz, Noe Escamilla, Hugo Sapon, Jose Rivera, Gustavo Juarez, Irael Jiguan, Juan J. Lopez, Justino Cuenca, Aurelio Salas, and David Rojas, and opt-in Plaintiffs Rigoberto Atlanteco, Pedro Cataneo, German Lazaro, Armando Luna, Abel Palacios, Edgar Castillo, Ricardo Garcia, and Noe Joel Espinosa on behalf of themselves and all of their heirs, executors, administrators, attorneys, and assigns (collectively "Plaintiffs") and Defendants Relay Delivery, Inc. (hereinafter "Relay Delivery"), Alex Blum, and Michael Chevett (collectively "Defendants," and with Plaintiffs, the "Parties") hereby agree upon this First Revised Settlement Agreement and Release ("Agreement") as a resolution of all issues involved herein as follows:

1. **Preliminary Matters.** Plaintiffs have reviewed the terms of this Agreement, have had the opportunity to confer with their legal counsel, including Lina Franco, Esq. and Wilhelm Ceron, Esq. of Lina Franco Law, P.C. (hereinafter "Plaintiffs' Counsel"), and/or other advisors of their own choosing in order to obtain advice with respect to the terms of this Agreement. The Parties participated in arms-length settlement negotiations and Plaintiffs exchanged detailed damages calculations prior to reaching a final settlement amount. Prior to signing this Agreement, Plaintiffs have had the opportunity to consider his counsel's advice with respect to the foregoing and following Agreement. Plaintiffs enter into this Agreement voluntarily and with a full understanding of its terms, after it has been translated into Plaintiffs' primary language(s) (including but not limited to Spanish) by Plaintiffs' Counsel.

2. **No Admission of Liability.** The Parties hereto recognize and agree that Defendants do not admit, and expressly deny, any violation of law or any liability to Plaintiffs or to anyone else as a result of or growing out of the matters set forth in the litigation styled *Rivera, et al. v. Relay Delivery, Inc., et al.*, Civil Action No. 17-cv-5012 (JLC), filed in the United States District Court for the Southern District of New York (the "Pending Action"), or which could have been raised in such suit, or which otherwise involve Plaintiffs' independent contractor relationships (or any alleged employment relationships) with Defendants and the termination of Plaintiffs' independent contractor relationships (or alleged employment relationships) with Defendants.

3. **Dismissal of Pending Action.** For and in consideration of the promises outlined in this Agreement, the sufficiency of which Plaintiffs acknowledge, Plaintiffs agree: (1) to dismiss with prejudice, or cause to be dismissed with prejudice, the Pending Action, including but not limited to any claims held by any opt-in Plaintiffs; (2) not to re-file the causes of action asserted in the Pending Action or any other causes of action against Defendants arising from independent contractor-related (or alleged employment-related) matters or other matters that were encompassed or could have been encompassed or raised in the Pending Action; and (3) not to institute any action against any Defendants in any court or other forum based on allegations or claims existing prior to the date of this Agreement that are released as set forth in this Agreement. The Parties expressly authorize their counsel to submit any papers to the Court that are necessary to effectuate the dismissal of the Pending Action, approval of this Agreement as fair and reasonable, and/or a full release of Plaintiffs' claims as specified herein. Plaintiffs will not be considered a prevailing party or parties.

4. **Consideration.**

    A. Relay Delivery agrees to pay Plaintiffs and their attorneys the maximum total sum of One Hundred and Thirty-Five Thousand Dollars and Zero Cents ($135,000.00) as set forth and allocated in Section 7 below and Exhibit A hereto (hereinafter the "Settlement Payment"), execute the Affidavit of Confession of Judgment attached as Exhibit B hereto, and for other good and valuable consideration as described below. Under no circumstances shall the Settlement Payment exceed One Hundred and Thirty-Five Thousand Dollars and Zero Cents ($135,000.00). Subject to the terms and conditions of this Agreement, the Settlement Payment shall be a full, complete, and final settlement and full, complete, and final satisfaction of any and all claims Plaintiffs have asserted as well as all potential claims Plaintiffs may have against Defendants, through and including the date upon which the Parties execute this Agreement, including all counsel fees and costs incurred by Plaintiffs, which shall be paid in installments, as contemplated and detailed under Section 7, by Relay Delivery through Plaintiffs' counsel as follows:

        i. Installment One: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (90) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the

        Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

ii. Installment Two: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (120) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

iii. Installment Three: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (150) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

iv. Installment Four: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (180) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

v. Installment Five: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (210) days Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

vi. Installment Six: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (240) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination

of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

vii. Installment Seven: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (270) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

viii. Installment Eight: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (300) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

ix. Installment Nine: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (330) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

x. Installment Ten: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (360) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

xi. Installment Eleven: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (390) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the

    Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

xii.  Installment Twelve: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (420) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

xiii.  Installment Thirteen: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (450) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

xiv.  Installment Fourteen: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (480) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

xv.  Installment Fifteen A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (510) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

xvi.  Installment Sixteen: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (540) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the

                Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

    xvii.    Installment Seventeen: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (570) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

    xviii.    Installment Eighteen: A Bank wire in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) made payable to "Lina M. Franco, as Attorney for Plaintiffs", for immediate deposit within (600) days after Court approval of this Agreement as a fair and reasonable resolution and its full and final dismissal of the Pending Action with prejudice, delivered to Plaintiffs' counsel. Determination of the Plaintiffs' share, counsel fees, and costs, is the responsibility solely of the Plaintiffs and their counsel.

The Parties acknowledge and agree that the Settlement Payment is conditioned upon plaintiff Jorge Alcaraz being dismissed from the Pending Action.

    B.    The executed Affidavit of Confession of Judgment shall be held in escrow and may only be filed by Plaintiffs' counsel, Lina Franco, Esq., upon Defendants' default on any payment under the terms of the Agreement, and failure to cure such default within ten (10) days after notice of default is transmitted to Defendants by email and certified mail.

    C.    The Parties acknowledge and agree that the Settlement Payment includes attorneys' fees, costs, penalties and liquidated damages. The Parties agree that Plaintiffs' Counsel may petition the Court for approval of attorneys' fees and costs. If approved by the Court, these fees and costs shall come out of the Settlement Payment. Defendants will not oppose this application for attorneys' fees and/or costs, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided it does not increase the Settlement Payment. The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Pending Action. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's final approval and dismissal with prejudice of the Pending Action.

    D.    Plaintiffs agree that they have no entitlement to any fees, expenses, wages, compensation, bonuses, commissions, gratuities, payouts, severance pay, vacation pay, or other benefits, damages, attorneys' fees or costs from Defendants (as defined below), except as specifically provided in this Settlement Agreement.

5. **Mutual Relesees**

  A. **General Release by Plaintiffs.** In consideration of the promises, payments and actions of Defendants set out in this Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, Plaintiffs, with respect solely and only to conduct that has arisen on, or prior to, the date this Agreement is executed, fully and forever release, relieve, waive, relinquish, and discharge Defendants from all actions, causes of action, suits, debts, dues, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, damages, judgments, executions, claims and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, which they had, now have or hereafter can, shall or may have against Defendants, arising out of, by reason of, or relating in any way whatsoever to any matter, cause or thing from the beginning of the world through the date Plaintiffs execute this Agreement, including but not limited to: (i) claims arising directly or indirectly from Plaintiffs' association, employment, and/or engagement with any of the Defendants, whether as independent contractors, employees, or otherwise, and/or the termination of that association, employment, and/or engagement; (ii) claims arising directly or indirectly from the actions or inaction of Defendants; (iii) claims under federal, state or local laws, statutes, constitutions, regulations, rules, ordinances or orders, including, but not limited to, claims under the New York Labor Law, the Wage Theft Prevention Act, the New York Hospitality Industry Wage Order, New York Wage Order for Miscellaneous Industries and Occupations, the New York Restaurant Industry Wage Order, the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Employee Retirement Income Security Act, the Equal Pay Act, the Immigration Reform and Control Act, the Consolidated Omnibus Budget Reconciliation Act, the Fair Credit Reporting Act, the Sarbanes Oxley Act, the Occupational Safety and Health Act, the Family and Medical Leave Act, the New York Corrections Law, the New York State Human Rights Law, the New York City Human Rights Law, each as amended, or any other federal, state, and/or local law; (iv) claims for minimum wages, overtime, commissions, and/or unpaid wages, compensation, and/or other remuneration, whether based on common law or otherwise, which specifically includes all claims for unpaid overtime, improper deductions, travel time, spread of hours pay, bonuses, penalties, expense reimbursements, gratuities, fees, tip credits, tip allowances, service charges, retained gratuities, call-in pay, tools-of-the-trade, and/or meal credits during Plaintiffs' employment with any of the Defendants and/or other compensation, wages, or benefits including, but not limited to, life insurance, accidental death and disability insurance, sick leave, or other employer provided plan or program, distributions of income or profit, vacation or other leave time, retirement, pension, the use of information obtained by Defendants as a result of the offering of group health insurance coverage and/or any related penalties, damages, liquidated damages and attorneys' fees under federal, state and/or local law; and (v) any other claim, whether for monies owed, reimbursement, attorneys' fees, litigation costs, damages, torts, intentional infliction of emotional distress, negligence, promissory estoppel, breach of contract, breach of an implied covenant of good faith and fair dealing, constructive discharge, wrongful discharge, defamation, fraud, misrepresentation, or otherwise, arising prior to or at the time of the execution of the Agreement, including, but not limited to, all claims asserted in the Pending Action. This release is limited solely and only to claims that have arisen on, or prior to, the date this Agreement is executed and transmitted to counsel for Defendants and it does not release or discharge any

claims that may occur after that date. Plaintiffs hereby specifically acknowledge that this Agreement, and the monies received by Plaintiffs and referenced herein, are a fair and reasonable resolution of a bona fide dispute over a provision of the Fair Labor Standards Act and/or for time worked.

Nothing in this Agreement shall infringe on Plaintiffs' ability to testify, assist or participate in an investigation, hearing or proceeding conducted by or to file a charge or complaint of discrimination with the National Labor Relations Board, U.S. Equal Employment Opportunity Commission or comparable state or local agencies. These agencies have the authority to carry out their statutory duties by investigating the charge or complaint, issuing a determination, filing a lawsuit in federal or state court in their own name, or taking any other action authorized by law. However, Plaintiffs are precluded from receiving compensation as a result of any such action.

      B.    **General Release by Defendants.** Defendants agree to, with respect solely and only to conduct that has arisen on, or prior to, the date this Agreement is executed, fully and forever release, relieve, waive, relinquish, and discharge Plaintiffs from all actions, causes of action, suits, claims and demands of any kind whatsoever, at law or in equity direct or indirect, known or unknown, discovered or undiscovered, which they had, now have or hereafter can, shall or may have against Plaintiffs, arising out of, by reason of, or relating in any way whatsoever to any matter, cause or thing from the beginning of the world through the date Plaintiffs execute this Agreement, including but not limited to: (i) claims arising directly or indirectly from Plaintiffs' association, employment, and/or engagement with any of the Defendants, whether as independent contractors, employees, or otherwise, and/or the termination of that association, employment, and/or engagement; (ii) claims arising directly or indirectly from the actions or inaction of Plaintiffs; (iii) claims under any federal, state or local laws, statutes, constitutions, regulations, rules, ordinances or orders; (iv) claims for penalties, damages, liquidated damages and attorneys' fees related to claims under federal, state and/or local law; and (v) any other claim, whether for monies owed, reimbursement, attorneys' fees, litigation costs, damages, torts, intentional infliction of emotional distress, negligence, promissory estoppel, breach of contract, breach of an implied covenant of good faith and fair dealing, constructive discharge, wrongful discharge, defamation, fraud, misrepresentation, or otherwise, arising prior to or at the time of the execution of the Agreement. This release is limited solely and only to claims that have arisen on, or prior to, the date this Agreement is executed and transmitted to counsel for Plaintiffs and it does not release or discharge any claims that may occur after that date.

Nothing in this Agreement shall infringe on Defendants' ability to testify, assist or participate in an investigation, hearing or proceeding conducted by the National Labor Relations Board, U.S. Equal Employment Opportunity Commission or comparable state or local agencies. These agencies have the authority to carry out their statutory duties.

    6.    **Plaintiffs' Responsibility for Taxes.** Plaintiffs assume full responsibility for their respective portions of the Settlement Payment of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid by Plaintiffs under any federal, state, or municipal laws of any kind, with respect to the monies paid by Relay Delivery to Plaintiffs and/or Plaintiffs' Counsel pursuant to this Agreement. Indeed, although the parties

believe, in good faith, that the tax treatment of the Settlement Payment referenced in this Agreement is proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that any Plaintiff and/or any Defendant is liable for any failure by any Plaintiff or Plaintiffs' Counsel to pay federal, state or local income or employment taxes with respect to the Settlement Payment set forth in this Agreement, or liable for interest or penalties related thereto, that Plaintiff agrees to indemnify and hold Defendants harmless for any such liability.

7. **Payment**.

   A. In consideration of the promises of Plaintiffs set forth herein, Relay Delivery shall issue the Settlement Payment set forth in Section 4 as a full and complete settlement and final satisfaction of any and all claims that Plaintiffs have or may have against Defendants, through the date of execution of this Agreement, as well as any claim for attorneys' fees and costs. The Settlement Payment shall be due and payable, in accordance with the allocations to each Plaintiff and Plaintiffs' Counsel set forth in Exhibit A in eighteen (18) monthly installments set forth in Section 4, commencing sixty (60) days after the Court both approves this Agreement as a fair and reasonable resolution of a bona fide dispute over a provision of the Fair Labor Standards Act, in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (U.S. 2016), and fully and finally dismisses the Pending Action with prejudice.

   B. To the extent any Settlement Payment due date above falls on a weekend or court holiday, the date such payment shall be due will be the next business day that is not a weekend or court holiday. Nothing contained in this Agreement shall preclude or limit Relay Delivery's right to make prepayment of any settlement amounts set forth in this Agreement without penalty.

   C. In no event shall any settlement payment under Sections 4, 7 and Exhibit A of this Agreement be due until the Court fully and finally dismisses the Pending Action and this Agreement has been approved as a fair and reasonable resolution of a bona fide dispute over a provision of the Fair Labor Standards Act. Moreover, in no event shall any settlement payment under Sections 4, 7 and Exhibit A of this Agreement be due or payable if any Plaintiff revokes this Agreement pursuant to Section 19. The Parties agree that Plaintiffs shall submit this Agreement to the Court for its inspection and approval as a fair and reasonable resolution of a bona fide dispute under the Fair Labor Standards Act and in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (U.S. 2016). Defendants shall be allowed to first review and comment on Plaintiffs' approval application prior to its submission to the Court, as well as submit its own submission if appropriate.

   D. The Parties agree that the individual settlement payments made to the Plaintiffs (excluding any approved attorneys' fees and costs) will be in consideration for time worked, liquidated damages, penalties, and interest subject to 1099 reporting and shall be made without any tax withholdings and shall be reflected on a Form 1099. Payments of any approved attorneys' fees and costs pursuant to this Agreement shall be made without any withholdings and Plaintiffs' Counsel and Plaintiffs will receive Forms 1099 for this payment. Relay Delivery shall

make all payments using the last tax documents submitted by Plaintiffs while engaged by or providing services for Relay Delivery. To the extent additional tax documentation is required in order to lawfully make payment to any Plaintiff, Relay Delivery shall request from Plaintiffs' Counsel, and that Plaintiff or those Plaintiffs shall provide, valid tax documents allowing Relay Delivery to lawfully make the individual Settlement Payment(s) to him, her, or them, including but not limited to IRS Forms W-4 and W-9. No Settlement Payment shall be due until after valid tax documents have been provided for all Plaintiffs.

8. **Governing Law.** The rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of New York, without regard to principles of conflict of laws. Venue for any dispute between the parties shall lie in the United States District Court for the Southern District of New York, or the New York State Supreme Court, New York County. However, if the District Court should refuse or decline to accept jurisdiction over the settlement for any reason, the Parties agree that this Agreement may be enforced in a court of competent jurisdiction located in New York County, New York. The District Court's refusal to retain jurisdiction over the settlement shall not void or otherwise affect this Agreement. If any provision is determined by a court of competent jurisdiction to be invalid or unenforceable (other than Section 5(A), in which case all monies paid hereunder must be returned to Relay Delivery if found to be invalid or unenforceable), the remaining provisions shall continue in full force and effect notwithstanding. Plaintiffs acknowledge that they have not previously transferred, assigned or conveyed any right or claim released in this Agreement. The headings used herein are for reference only and shall not in any way affect the meaning or interpretation of this Agreement.

9. **Return of Company Property.** To the extent they have not already done so, Plaintiffs agree to return to the Defendants all property of the Defendants, which is or has been in their possession, custody, or control, including but not limited to written materials, records, computer files, and documents (whether maintained in hard copy format, digitally, electronically, or in any other medium) and any copies thereof, including, but not limited to, all property of Defendants taken or received by Plaintiffs during their relationship, alleged employment, engagement, and/or services for or with Relay Delivery, or upon their separation from Relay Delivery.

10. **Reemployment/Reengagement of Plaintiffs.** The Plaintiffs knowingly and voluntarily agree to relinquish and hereby do relinquish any and all rights Plaintiffs may have to either directly or indirectly: (i) be employed/engaged by, (ii) be assigned to, (iii) work for, (iv) seek employment/engagement with or apply to, (v) accept employment/engagement with, or (vi) provide services in exchange for compensation in any capacity to (including but not limited to as an employee, independent contractor, consultant or temporary employee) Defendants. The Plaintiffs agree that Plaintiffs will not seek, apply for, or accept any employment, engagement, or assignment to which Plaintiffs have relinquished any rights, and that in the event they inadvertently seek, apply for, or accept any employment, engagement, or assignment to which Plaintiffs have relinquished any rights they will immediately withdraw, forego, leave and/or voluntarily terminate such inquiry, application, employment and/or assignment. Defendants may also immediately terminate any employment, engagement, or assignment to which the Plaintiffs have relinquished any rights at any time. The Plaintiffs agree and understand that this provision is intended to protect the Defendants from allegations of retaliation.

11. **Communications with the Media.** Plaintiffs, Plaintiffs' Counsel, Defendants, and Defendants' Counsel agree that they will not issue, send or post, or cause to be issued, sent or posted, any press release, posting, e-mail, or other verbal or written communication to any electronic, print, or digital media, blogs, or social networking sites, including but not limited to Facebook, Snapchat, Instagram, LinkedIn, SMS, WhatsApp and Twitter (collectively, the "Media") regarding the Pending Action, the Parties' settlement discussions, the existence and/or terms of this Agreement, and/or the facts and events leading up to same. If contacted by any member of the Media or any other individuals through any of the Media, Plaintiffs and/or Plaintiffs' Counsel will simply state that the Pending Action has been resolved to the satisfaction of the parties. Notwithstanding the terms of this paragraph, the Parties shall be free to make whatever disclosures they deem appropriate to their attorneys and financial and tax advisors, as well as, in Defendants' case, to its members, officers, shareholders, directors, and/or other relevant stake holders as well as their attorneys and financial and tax advisors. Nothing herein shall prevent Plaintiffs' Counsel, Plaintiffs, Defendants' Counsel, and/or Defendants from discussing their experiences in this case with third-parties other than the Media. In the event Plaintiffs, Class Counsel, Defendants, and/or Defense Counsel seek enforcement of this section in a court of competent jurisdiction, the prevailing party or parties as determined by the court shall be entitled to an award of their reasonable attorneys' fees and costs in seeking enforcement of this section.

12. **Status of Settlement If Case Is Not Ultimately Dismissed.** In the event the Court fails to dismiss the Pending Action with prejudice as contemplated by this Agreement, this Agreement shall be null and void *ab initio*. In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution date of this Agreement, and the Parties shall proceed in all respects as if the Agreement had not been executed.

13. **Important Acknowledgments**. It is further understood and agreed that the Settlement Payment and the other good and valuable consideration provided for herein, are not a mere recital but are the consideration for this Agreement and all terms herein, and the full and final release effected thereby. The Parties represent and warrant that the Settlement Payment is fair and reasonable. The Parties represent and warrant that they are entering into this Agreement of their own free will and accord after consultation with their attorneys. The Parties acknowledge that they have jointly prepared this Agreement and that they are executing this Agreement knowingly and voluntarily.

14. **No Other Representations or Agreements**. Each party acknowledges that, except as expressly set forth herein, no representations of any kind or character have been made by any other party or parties, agents, representatives, or attorneys, to induce the execution of this Agreement. This Agreement constitutes a single integrated contract expressing the entire agreement of the Parties hereto. There is no other agreement or understanding, written or oral, expressed or implied, among the parties hereto concerning the subject matter hereof, except the agreements set forth in this Agreement. This Agreement constitutes and contains the entire agreement among the parties, and supersedes and replaces all prior negotiations and all agreements, proposed or otherwise, written or oral, concerning the subject matter hereof, including but not limited to the Confidential Settlement Terms Sheet fully-executed by the Parties on or about March 6, 2018 and the original Settlement Agreement and Release fully-executed by the Parties on or about April 19, 2018. This is an integrated document.

15. **No Modification Except In Writing.** This Agreement cannot be modified or changed except by a writing, signed by the parties, with specific reference to this Agreement.

16. **Successors and Assigns.** This Agreement will apply to, be binding in all respects upon and inure to the benefit of the respective successors and assigns of the Parties, including their personal representatives, administrators, executors, heirs and others taking from them; provided, however, that no party may delegate or avoid any of its liabilities, obligations or responsibilities under this Agreement.

17. **Execution In Counterpart and Facsimile Signatures.** This Agreement may be executed in counterpart by each party or their duly authorized officer, representative, or attorney and each executed Agreement, when taken together, shall constitute a complete Agreement. Any signature made and transmitted electronically, by facsimile, or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page electronically, by facsimile or email.

18. **Knowing and Voluntary Release of Claims.** Plaintiffs acknowledge that:

A. Plaintiffs have carefully read this Settlement Agreement and they fully understand its meaning;

B. Plaintiffs have been advised that an individual waiving rights under the Age Discrimination in Employment Act ("ADEA") is entitled to a minimum of 21 days within which to consider this agreement and release, and therefore Plaintiffs acknowledge that they have 21 days from the date of receiving this Settlement Agreement, which contains a release of ADEA claims, to return the signed Settlement Agreement and release. Plaintiffs acknowledge that they may execute and return this agreement and release earlier if they so decide, and that by executing and returning this agreement and release during the 21 day period, they will waive any right to consider the agreement and release for the 21 day period. Plaintiffs acknowledge that they have been further advised that they may consult with an attorney or other adviser of their choosing prior to making the decision to execute and return this Settlement Agreement.

C. Defendants hereby advise Plaintiffs in writing that Plaintiffs should consult with an attorney before signing the Settlement Agreement, and Plaintiffs acknowledge that they have in fact consulted with an attorney regarding this Agreement.

D. Plaintiffs are signing this Agreement, knowingly, voluntarily, and without any coercion or duress; and

E. Everything Plaintiffs are receiving for signing this Agreement is described in the Agreement itself, and no other promises or representations have been made to cause Employee to sign it.

19. **Revocation.** Plaintiffs understand and agree that they have a period of seven (7) days following the signing of this Agreement to revoke it. Plaintiffs understand that in the event that any Plaintiff revokes this Agreement, the entire Agreement shall be null and void and of no force or effect on either party and therefore Relay Delivery will be under no obligation to make

the payments set forth in Sections 4, 7, and Exhibit A. In order to revoke this Agreement, the Plaintiff wishing to do so must sign and send a written notice of the decision to do so, addressed to Fox Rothschild LLP (Attn: Alexander W. Leonard), 101 Park Avenue, Suite 1700, New York, New York 10178, and the written notice must be received by Defendants no later than the eighth day after Plaintiff signed this Agreement. Plaintiffs further understand that this Settlement Agreement shall not be effective or enforceable until the day after the seven (7) day revocation period has expired and provided that no Plaintiff exercises his or her right to revoke this Settlement Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have executed, or caused their duly authorized officer, representative, or attorney to execute, this Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have executed, or caused their duly authorized officer, representative, or attorney to execute, this Agreement.

**PLAINTIFFS:**

_____  Date: 04--09, 2018
ALEJANDRO RIVERA

_____  Date: 04-09, 2018
CARLOS MONTIEL

_____  Date: 04-09, 2018
ALFONSO GONZALEZ

_____  Date: 4.12, 2018
RIGOBERTO SALAS

_____  Date: 04-11, 2018
LUIS RAMIREZ HERRERA

_____  Date: 4-12, 2018
PEDRO GONZALEZ

_____  Date: 4-11, 2018
CARLOS MUNOZ HERNANDEZ

Antonio Vivar  Date: 04-11, 2018
ANTONIO VIVAR

_____  Date: 4-11, 2018
OSMAN SAMAYOA

_____  Date: 4.19, 2018
SERGIO JUAREZ

_____  Date: 04-19-8, 2018
JESUS ORTIZ

_____  Date: 4/12, 2018
ANDRES FUENTES

_____  Date: 4-8, 2018
JORGE ORTIZ

_____  Date: _____4 - 8_____, 2018
**NOE ESCAMILLA**

_____  Date: _____4 -18_____, 2018
**HUGO SAPON**

_____  Date: _____4/16_____, 2018
**JOSE RIVERA**

_____  Date: ____04 - 08_____, 2018
**GUSTAVO JUAREZ**

_____  Date: _____15. 4.____, 2018
**IRAEL JIGUAN**

_____  Date: ____04 - 08_____, 2018
**JUAN J. LOPEZ**

_____  Date: _____4 - 17_____, 2018
**JUSTINO CUENCA**

_____  Date: ____04 - 08_____, 2018
**AURELIO SALAS**

_____  Date: _____4 - 11_____, 2018
**DAVID ROJAS**

_____  Date: _____4 - 11_____, 2018
**RIGOBERTO ATLANTECO**

_____  Date: ____04 - 09_____, 2018
**PEDRO CATANEO**

_____  Date: _____4 - 9_____, 2018
**GERMAN LAZARO**

_____  Date: ____04 - 09_____, 2018
**ARMANDO LUNA**

_____  Date: ___04 - 11 - 18___, 2018
**ABEL PALACIOS**

_____  Date: ____04 - 08_____, 2018
**EDGAR CASTILLO**

_____  Date: _____4-15_____, 2018
**RICARDO GARCIA**

_____  Date: __04__/__11__, 2018
**NOE JOEL ESPINOSA**


_____
LINA M. FRANCO, ESQ
5/10/2018

**DEFENDANTS:**

By: _____  Date: 5|3|     , 2018
RELAY DELIVERY, INC.

_____  Date: 5|3     , 2018
ALEX BLUM

_____  Date: 5/3     , 2018
MICHAEL CHEVETT

# EXHIBIT A

## TOTAL INDIVIDUAL SETTLEMENT ALLOCATIONS

| Name | Total Individual Settlement Payments |
| --- | --- |
| **ALEJANDRO RIVERA** | $4,813.33 |
| **CARLOS MONTIEL** | $4,813.33 |
| **ALFONSO GONZALEZ** | $4,813.33 |
| RIGOBERTO SALAS | $1,000 |
| LUIS RAMIREZ HERRERA | $1,000 |
| PEDRO GONZALEZ | $1,000 |
| CARLOS MUNOZ HERNANDEZ | $1,000 |
| ANTONIO VIVAR | $1,000 |
| OSMAN SAMAYOA | $1,000 |
| SERGIO JUAREZ | $1,000 |
| JESUS ORTIZ | $1,000 |
| ANDRES FUENTES | $1,000 |
| JORGE ORTIZ | $1,000 |
| NOE ESCAMILLA | $1,000 |
| **HUGO SAPON** | $4,813.33 |
| **JOSE RIVERA** | $1,000 |
| **GUSTAVO JUAREZ** | $4,813.33 |
| **IRAEL JIGUAN** | $4,813.33 |
| **JUAN J. LOPEZ** | $4,813.33 |
| **JUSTINO CUENCA** | $1,000 |
| **AURELIO SALAS** | $4,813.33 |
| **DAVID ROJAS** | $4,813.33 |
| RIGOBERTO ATLANTECO | $1,000 |
| **PEDRO CATANEO** | $4,813.33 |
| **GERMAN LAZARO** | $4,813.33 |
| **ARMANDO LUNA** | $1,000 |
| **ABEL PALACIOS** | $4,813.33 |
| **EDGAR CASTILLO** | $4,813.33 |
| **RICARDO GARCIA** | $4,813.33 |
| **NOE JOEL ESPINOSA** | $4,813.33 |
| LINA FRANCO LAW, P.C. (amount subject to approval by the Court) | Attorneys' Fees of $44,550 (to "Lina Franco Law, P.C.") + costs of $2,650 (JAMS) + $600 = (total) $47,800 |
| **TOTAL SETTLEMENT** | **$135,000.00** |

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEJANDRO RIVERA, et al., | Civil Action No. 17-cv-05012 (JLC) |
| Plaintiffs, | ECF Case |
| -against- | |
| RELAY DELIVERY, INC., et al., | |
| Defendants. | |

**STATE OF NEW YORK** }
                             } ss.:
**COUNTY OF** _____ }

Alex Blum being duly sworn, does depose and say:

1. I am CEO of Relay Delivery, Inc. ("Relay").
2. I am authorized to execute this Affidavit of Confession of Judgment on behalf of Relay Delivery, Inc..
3. Relay hereby confesses judgment and authorizes entry of judgment against Relay in the sum of One Hundred Thirty Five Thousand Dollars and Zero Cents ($135,000), less any payments already made pursuant to the terms of the Settlement Agreement and Release (the "Agreement") between the Plaintiffs and the Defendants in the above-captioned action.
4. This Affidavit of Confession of Judgment is for a debt justly due to Plaintiffs pursuant to the Settlement Agreement dated [_____, 2018], and the Defendants' default in payment under the terms of that Agreement.
5. The executed Affidavit of Confession of Judgment shall be held in escrow and may only be filed by Plaintiffs' counsel, Lina Franco, Esq., upon Defendants' default on any payment under the terms of the Agreement, and failure to cure

such default within ten (10) days after notice of default is transmitted to Defendants by email and certified mail.

## CONFESSION BY RELAY DELIVERY INC.

_____  
Alex Blum

Dated: _____ , 20___

## ACKNOWLEDGMENT

On this _____ day of _____ 2018 before me personally came Alex Blum and that he, as such, being authorized so to do, executed the foregoing instrument for the purpose therein contained, by signing his name.

Sworn to before me
this _____ day of _____, 2018

_____  
Notary Public